In the
# United States Court of Appeals
## for the Fifth Circuit

---

## No. 25-30104

---

UNITED STATES OF AMERICA,
*Plaintiff - Appellee,*

v.

SHAQUAILA LEWIS,
*Defendant - Appellant*

---

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 5:23-CR-67-1

---

## ORIGINAL BRIEF FOR THE APPELLANT
## SHAQUAILA LEWIS

---

**REBECCA L. HUDSMITH**
Federal Public Defender

**DUSTIN C. TALBOT**
Appellate Chief
Federal Public Defender's Office
Middle and Western Districts of
Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

*Attorney for the Appellant*

In the
United States Court of Appeals
for the Fifth Circuit

---

No. 25-30104

---

UNITED STATES OF AMERICA,
*Plaintiff - Appellee,*

v.

SHAQUAILA LEWIS,
*Defendant - Appellant*

---

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 5:23-CR-67-1

---

## ORIGINAL BRIEF FOR THE APPELLANT
## SHAQUAILA LEWIS

---

## CERTIFICATE OF INTERESTED PERSONS

---

Pursuant to Fifth Circuit Rule 28.2.1, undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

i

**Judges Below:**

The Honorable S. Maurice Hicks, Jr., United States District Judge
The Honorable Mark L. Hornsby, United States Magistrate Judge

**Defendant - Appellant:**

Shaquaila Lewis
B.O.P. Reg. No. 54052-510

**Attorneys for the Defendant - Appellant:**

Dustin C. Talbot (on appeal)
    Appellate Chief
    Federal Public Defender's Office
    Middle and Western Districts of Louisiana
John Kevin Stockstill (in the district court)
    Law Office of J. Kevin Stockstill
    Lafayette, LA 70503
Rashid Young (in the district court)
    Young Law Firm
    Homer, LA 71040

**Attorneys for the Government - Appellee**

Camille Ann Domingue (on appeal)
Seth D. Reeg (in the district court)
Justin Michael Woodard (in the district court)
    Assistant United States Attorneys

Lafayette, Louisiana, June 27, 2025.

*s/Dustin C. Talbot*
DUSTIN C. TALBOT

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant Shaquaila Lewis seeks oral argument on the district court's erroneous application of the sophisticated means enhancement to elementary document fraud that falls far below the standard established by this Court's controlling precedent in *United States v. Valdez*. This appeal presents a significant issue of first impression regarding the proper application of sophisticated means enhancement to basic PPP loan fraud, where the district court's characterization of the scheme as "remarkably simple in approach" directly contradicts its finding of sophisticated means, creating a clear conflict that warrants oral argument to ensure consistent application of sentencing guidelines across similar cases.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................i

STATEMENT REGARDING ORAL ARGUMENT .................................iii

TABLE OF CONTENTS ...........................................................iv

TABLE OF AUTHORITIES ......................................................vii

STATEMENT OF JURISDICTION...............................................1

STATEMENT OF THE ISSUE...................................................2

> Whether the district court clearly erred in applying a two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(10)(C) for the use of sophisticated means when the defendant's conduct involved only elementary document falsification and basic concealment methods that fall within the ordinary fraud techniques inherent in PPP loan applications?

STATEMENT OF THE CASE ......................................................2

   I.   The Broader Fraud Scheme: An Operation Designed by the Deceased Mastermind ................................................3

   II.   Lewis's Limited Role as Facilitator and Kickback Recipient .....4

   III.   The Specific Offense of Conviction: A Single Application Using Wiggins's Methods ........................................6

   IV.   The District Court's Application of the Sophisticated Means Enhancement ............................................7

SUMMARY OF THE ARGUMENT ...........................................9

ARGUMENT ....................................................................10

I.   I The District Court Clearly Erred in Applying the Sophisticated Means Enhancement to Elementary Document Fraud .................................................................... 10

A.   Standard of Review ........................................... 10

B.   Legal Authorities ............................................... 11

1.   The Definition of Sophisticated Means ........................ 11

2.   The Critical *Valdez* Decision: What Does Not Constitute Sophisticated Means .................................. 12

3.   Fifth Circuit Precedent Establishes a High Bar for Sophisticated Means ..................................................... 14

C.   The District Court Committed Clear Error Because Lewis's Basic PPP Fraud Methods Do Not Satisfy the High Bar for Sophisticated Means Under Fifth Circuit Precedent .......................................................... 16

1.   Ms. Lewis's Elementary Conduct Cannot Support Sophisticated Means When *Valdez's* Complex Medical Fraud Did Not ................................................ 16

2.   Each Method Identified by the District Court Represents Ordinary Document Fraud Inherent in Loan Applications ........................................................... 18

a.   The False Schedule C Form ........................... 18

b.   Writing "Payroll" on Personal Checks ........... 19

c.   Late Business Registration ............................. 19

3.   Ms. Lewis Was a Facilitator, Not the Architect of Any Sophisticated Elements ................................................ 20

4.   The District Court's Analysis Improperly Conflated Any Concealment with Sophisticated Means ..............21

5.   The District Court's Internal Contradiction Demonstrates Clear Error ...........................................22

D.   The Erroneous Enhancement Requires Remand Because the Error Is Not Harmless .................................23

CONCLUSION ........................................................................26

CERTIFICATE OF SERVICE ................................................27

CERTIFICATE OF COMPLIANCE ........................................27

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE**

*United States v. Clements*, 73 F.3d 1330 (5th Cir. 1996) ................ 11, 15

*United States v. Conner*, 537 F.3d 480 (5th Cir. 2008) .......................... 15

*United States v. Guzman-Rendon*, 864 F.3d 409 (5th Cir. 2017) ...... 23-24

*United States v. Harris*, 821 F.3d 589 (5th Cir. 2016) ........................... 23

*United States v. Ibarra-Luna*, 628 F.3d 712 (5th Cir. 2010) ............. 23-24

*United States v. Jinwright*, 683 F.3d 471 (4th Cir. 2012) ............... 14, 22

*United States v. Miller*, 906 F.3d 373 (5th Cir. 2018) ...... 10-11, 14-15, 19

*United States v. Redmond*, 965 F.3d 416 (5th Cir. 2020) ...................... 24

*United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013) ................... *passim*

*United States v. Wright*, 496 F.3d 371 (5th Cir. 2007) ...................... 8, 15

**STATUTES**

18 U.S.C. § 1343 ............................................................................... 6

18 U.S.C. § 3231 ............................................................................... 1

18 U.S.C. § 3742 ............................................................................... 2

28 U.S.C. § 1291 ............................................................................... 2

**SENTENCING GUIDELINES**

U.S.S.G. § 2B1.1(b)(10)(C) ..................................................... *passim*

U.S.S.G. § 2B1.1 cmt. n. 9(B) ............................................ 11, 16, 18-19, 22

In the
United States Court of Appeals
for the Fifth Circuit

---

No. 25-30104

---

UNITED STATES OF AMERICA,
*Plaintiff - Appellee,*

v.

SHAQUAILA LEWIS,
*Defendant - Appellant*

---

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 5:23-CR-67-1

---

## ORIGINAL BRIEF FOR THE APPELLANT
## SHAQUAILA LEWIS

---

## STATEMENT OF JURISDICTION

This matter originated in the United States District Court for the Western District of Louisiana. The district court's jurisdiction arose under 18 U.S.C. § 3231 inasmuch as the action involved an allegation of an offense against the United States. This is an appeal of a final judgment entered by the district court on February 14, 2025 and an

amended final judgment entered by the district court on March 5, 2025. ROA.65, 83. Appellant filed a timely notice of appeal on February 24, 2025. ROA.81. As such, this Court's jurisdiction to review the matter is provided by 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUE

Whether the district court clearly erred in applying a two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(10)(C) for the use of sophisticated means when the defendant's conduct involved only elementary document falsification and basic concealment methods that fall within the ordinary fraud techniques inherent in PPP loan applications?

## STATEMENT OF THE CASE

This appeal challenges the district court's application of a sophisticated means sentencing enhancement to conduct that represents the most basic form of loan fraud—falsifying documents and mislabeling funds. The Appellant Shaquaila Lewis, a first-time offender who served as a facilitator in a scheme masterminded by the now-deceased

Shawanna Wiggins[1], received a 27-month sentence after the district court applied a two-level enhancement for sophisticated means. The enhancement was based on three elementary fraud techniques: submitting a false tax document, writing "payroll" on personal checks, and registering a business three months after filing an initial loan application.

## I.    The Broader Fraud Scheme: An Operation Designed by the Deceased Mastermind

Between May 2020 and May 2021, Shawanna Wiggins orchestrated a systematic COVID-19 relief fraud scheme from Ms. Lewis's residence in Homer, Louisiana. ROA.271-75. Operating from Lewis's IP address, Wiggins submitted 17 fraudulent applications to the Paycheck Protection Program (PPP) and Economic Injury Disaster Loan Program (EIDL) on behalf of multiple individuals (including Ms. Lewis and her husband) securing total loan proceeds of $1,196,588. ROA.271-75.

The scheme's architecture was entirely Wiggins's creation. She developed the fraudulent documents and coordinated the systematic submission of false applications. ROA.319. As defense counsel

---

[1] Ms. Wiggins's last name is also spelled "Wiggens" in various places in the record. This brief will refer to her as "Wiggins."

established below, "Ms. Wiggins, and Ms. Wiggins only, concocted the false financial information submitted in/with the loan applications." ROA.319. The government acknowledged that "there was another individual involved, perhaps most involved, based on evidence that was obtained in this case" who "could not be prosecuted" due to Ms. Wiggins's death in a car accident. ROA.164.

Ms. Lewis helped Wiggins recruit multiple participants who provided personal identifying information but often never signed documentation themselves. For example, unindicted coconspirator N.J. told law enforcement that "Lewis approached her and offered to file a fraudulent PPP loan on N.J.'s behalf" and that "she then provided Lewis with her personal identifying information but never signed any documentation." The fraudulent application for N.J. included false documentation created by Wiggins, including fabricated W-3 forms claiming wages of $509,000 when actual tax records showed gross receipts of only $986 and a net loss of $27,583. ROA.273.

## II.   Lewis's Limited Role as Facilitator and Kickback Recipient

Ms. Lewis's role was limited to providing logistical support and employing basic fraud methods designed by Wiggins. While Lewis bears

responsibility for her own conduct, the sophistication of any broader scheme was Wiggins's creation, not Lewis's contribution. She provided her residence and computer access to Wiggins, who used Lewis's IP address to submit the fraudulent applications. ROA.271-75. She recruited participants and gathered their personal identifying information for Wiggins. For this logistical support, Lewis received a small percentage of the total proceeds—approximately $75,000-$80,000[2] from the $1,196,588 scheme. ROA.163, 271-75.

The contrast between Lewis's role and Wiggins's operation is stark. While Wiggins designed false tax documents, created fraudulent applications across more than a year, and coordinated the aspects of the scheme, Lewis served essentially as a host and recruiter. Even the district court characterized the scheme as "remarkably simple in approach" from Lewis's perspective. ROA.159. This simplicity reflects Lewis's limited, facilitating role rather than any sophisticated methodology she employed.

---

[2] Defense counsel below stated that Ms. Lewis received "$75-80,000." ROA.163. The court commented that "I did not see that I could tease out the specific dollar amount attributable to Ms. Lewis-Chatman, and whether it's 75 or 80,000 or 90 or 102. ROA.165. But the overwhelming majority of the funds went to Ms. Wiggins and other unindicted individuals.

## III.    The Specific Offense of Conviction: A Single Application Using Wiggins's Methods

The specific offense of conviction involved Ms. Lewis's February 14, 2021 electronic submission of a false PPP application to Square Capital in the name of her company Perfect Memories Travel, seeking approximately $20,833 for a purported second-draw loan. As part of this application, Ms. Lewis (through Ms. Wiggins) submitted a fictitious 2019 Schedule C tax form claiming gross receipts of $140,568.32, while the actual Schedule C she had filed with the IRS showed only $5,712 in gross receipts. Ms. Lewis falsely certified that the funds would be used to retain workers and maintain payroll and that she had used the original loan amount only for eligible expenses. In reality, she used the funds for personal expenses. ROA.221-23.

On May 24, 2024, Ms. Lewis appeared before the district court and entered a guilty plea to Count 2 of the indictment, charging wire fraud in violation of 18 U.S.C. § 1343. During the plea colloquy, Ms. Lewis acknowledged that she had received PPP loan funds and spent them, though the application "was illegally submitted by someone else," referring to Ms. Wiggins. ROA.128. The court accepted her plea after

finding it was free and voluntary, that she understood the charges and penalties, and that there was a factual basis for the plea. ROA.150.

Under the terms of her plea agreement, Ms. Lewis stipulated to the facts in the government's factual basis, admitting that she electronically submitted the false February 14, 2021 PPP application to Square Capital, falsely certified the application's accuracy, and used the resulting $20,583 in loan proceeds for personal expenses. ROA.223.

## IV. The District Court's Application of the Sophisticated Means Enhancement

The probation office recommended application of a two-level sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C). ROA.245. Ms. Lewis objected to this enhancement through counsel. ROA.261, 319-20.

Over Lewis's objection, the district court applied the two-level sophisticated means enhancement based on three methods: (1) the false Schedule C form showing inflated gross receipts; (2) Ms. Lewis writing "payroll" on checks to herself; and (3) registering Perfect Memories Travel three months *after* submitting the initial application "in an effort to make the company appear legitimate." ROA.157-58.

The district court reasoned that these methods constituted sophisticated means because they were "efforts to help conceal the offense" that "made it more difficult to detect the scheme." ROA.159. The court relied primarily on *United States v. Wright*, 496 F.3d 371 (5th Cir. 2007), as controlling precedent. ROA.158.

Following application of the enhancement, the district court sentenced Ms. Lewis to 27 months' imprisonment—at the bottom of the calculated guidelines range of 27 to 33 months. ROA.176. Without the enhancement, the correct guideline range would have been 21 to 27 months, making a sentence at the bottom of the correct range 21 months—six months lower than the imposed sentence.

The court entered a final judgment on February 14, 2025 and an amended final judgment on March 5, 2025. ROA.65, 83. Lewis filed a timely notice of appeal on February 24, 2025. ROA.81.

## SUMMARY OF THE ARGUMENT

The district court clearly erred in applying a sophisticated means enhancement to conduct that represents elementary document fraud typical of loan applications. Ms. Lewis's conduct—submitting a false tax document, writing "payroll" on personal checks, and registering a business after filing an application—falls far below the "especially complex or especially intricate offense conduct" required by U.S.S.G. § 2B1.1(b)(10)(C). This Court's controlling precedent in *United States v. Valdez* establishes that routine concealment methods cannot support the enhancement, even in highly complex underlying fraud schemes. The district court's characterization of the scheme as "remarkably simple in approach" directly contradicts its sophisticated means finding, demonstrating clear error that requires reversal and remand for resentencing.

## ARGUMENT

## I. The District Court Clearly Erred in Applying the Sophisticated Means Enhancement to Elementary Document Fraud

The district court clearly erred in applying the sophisticated means enhancement to conduct that represents elementary document fraud typical of loan applications. The enhancement requires "especially complex or especially intricate offense conduct," not merely any concealment efforts. This Court's precedent establishes a high bar for sophisticated means that Ms. Lewis's basic fraud methods cannot meet. Most importantly, this Court's decision in *United States v. Valdez* demonstrates that routine concealment methods cannot support the enhancement, even when part of a highly complex underlying fraud scheme. Ms. Lewis's elementary conduct falls far below this standard and represents the type of ordinary fraud inherent in loan applications that cannot justify the enhancement.

### A. Standard of Review

This Court reviews the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. *United States v. Miller*, 906 F.3d 373, 376-77 (5th Cir. 2018). The district court's factual determination that a defendant used sophisticated

10

means is reviewed for clear error. *Id.* at 380. This Court "will not find a district court's ruling to be clearly erroneous unless we are left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996)). "Under the clearly erroneous standard, [this Court] will uphold a finding so long as it is plausible in light of the record as a whole." *Id.*

## B.   Legal Authorities

### 1.   The Definition of Sophisticated Means

The Sentencing Guidelines require a two-level enhancement where a defendant uses sophisticated means in committing fraud offenses. U.S.S.G. § 2B1.1(b)(10)(C). "Sophisticated means" is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n. 9(B). The commentary provides that conduct such as "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." *Id.*

### 2.    The Critical *Valdez* Decision: What Does Not Constitute Sophisticated Means

Most importantly for this case, this Court has clearly established that routine financial movements and basic document fraud do not constitute sophisticated means, even in the context of a highly complex underlying fraud scheme. In *United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013), the Court reversed a sophisticated means enhancement despite the defendant operating an elaborate healthcare fraud involving multiple clinics, sophisticated medical procedures, and extensive concealment efforts.

The *Valdez* fraud scheme was extraordinarily complex in its underlying medical and billing components. Valdez operated two pain management clinics under the International Institute of Pain Management in El Paso and San Antonio, performed prolotherapy (an experimental medical procedure involving injecting irritants like dextrose, glycerin, calcium and phenol around joints), but fraudulently billed federal programs for different reimbursable procedures—facet joint injections and peripheral nerve injections. *Id.* at 687-90. The scheme involved training employees to perform prolotherapy while billing for different procedures, creating false patient encounter forms, advertising

prolotherapy but billing for covered procedures, requiring patients to receive injections to get pain medication prescriptions filled, and systematically deceiving medical reviewers about the nature of the procedures. *Id.* The fraud involved over $13 million in restitution, multiple employees knowingly participating in fraudulent billing, mass-marketing through mail fliers to 16,626 residents and television commercials, and complex medical deception requiring expert testimony to explain the differences between the procedures actually performed and those billed to insurance programs. *Id.* at 688-89, 694.

Despite this sophisticated underlying healthcare fraud, the Fifth Circuit reversed the sophisticated means enhancement because Valdez's financial concealment methods were routine. *Id.* at 695. The Court held that the Valdez's "transfers from his operating accounts to his investment accounts do not constitute sophisticated means." *Id.* at 695. The Court emphasized that "Valdez used no false names, fictitious entities, shell companies or complicated financial transactions, or any other particularly sophisticated means to hide or conceal the assets." *Id.*

Crucially, *Valdez* established that there must be clear separation between sophisticated underlying fraud and sophisticated means of

concealment: "[T]here is no indication that this open and transparent direct deposit and movement of funds involved sophisticated means or could have made it more difficult for his offense of health care fraud to be detected." *Id.* The Court's analysis demonstrates that even where the underlying fraud involves complex medical deception, employee training, systematic billing fraud, and extensive victim harm, sophistication in concealment requires methods that are genuinely complex or intricate beyond typical fraud violations.

The *Valdez* standard aligns with the Fourth Circuit's recognition that sophisticated means requires more than "the concealment or complexities inherent in fraud." *United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir. 2012). The enhancement demands "some means of execution that separates the offense before us from the ordinary or generic." *Id.*

### 3.  Fifth Circuit Precedent Establishes a High Bar for Sophisticated Means

This Court has affirmed the sophisticated means enhancement in cases involving methods that made detection more difficult through especially complex or intricate conduct. In *Miller*, 906 F.3d at 380, the Court upheld the enhancement where the defendant employed "multiple methods" including creating false bookkeeping entries, forging

14

signatures, misrepresenting her boyfriend as a vendor, and continuously moving funds between accounts to obscure the link between herself and the fraudulent payments.

Similarly, in *United States v. Wright*, 496 F.3d 371, 378-79 (5th Cir. 2007), the Court found sophisticated means where the defendant used fraudulent cashier's checks to create false creditworthiness and complex account manipulations—conduct requiring specialized knowledge and coordination beyond ordinary fraud.

The Court also upheld the enhancement in *Clements*, 73 F.3d at 1340, where the defendant repeatedly converted received funds into multiple cashier's checks made out to himself, which he then deposited into his wife's separate bank account, because his actions "obscure[d] the link between the money and ... himself" and "undeniably made it more difficult for the IRS to detect his [tax] evasion."

Additionally, in *United States v. Conner*, 537 F.3d 480, 492 (5th Cir. 2008), the Court found sophisticated means where the defendant traveled to 23 different states to obtain information about credit accounts and used a fictitious name and business to conduct fraudulent transactions.

C.   **The District Court Committed Clear Error Because Lewis's Basic PPP Fraud Methods Do Not Satisfy the High Bar for Sophisticated Means Under Fifth Circuit Precedent**

1.   **Ms. Lewis's Elementary Conduct Cannot Support Sophisticated Means When *Valdez's* Complex Medical Fraud Did Not**

The sophisticated means enhancement requires "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n. 9(B). This Court's decision in *Valdez* provides the controlling framework and demonstrates why Ms. Lewis's elementary conduct cannot support the enhancement.

As detailed above, *Valdez* involved an extraordinarily sophisticated healthcare fraud that dwarfs anything in Ms. Lewis's case—a psychiatrist operating multi-clinic operations with trained employees systematically billing for different procedures than those performed, complex medical deception, and over $13 million in restitution. Yet this Court reversed the sophisticated means enhancement because the financial concealment methods were routine. 726 F.3d at 695.

Ms. Lewis's conduct falls far below the *Valdez* standard. While *Valdez* involved a psychiatrist orchestrating a multi-clinic operation with

trained employees systematically billing for different procedures than those performed, Ms. Lewis served as a facilitator in a "remarkably simple" scheme designed by someone else. ROA.159. Where *Valdez* involved sophisticated medical procedures requiring expert testimony to distinguish them from legitimately billed procedures, Ms. Lewis's scheme involved basic document alteration requiring no special expertise. Where *Valdez* involved over $13 million in restitution from systematic medical deception across multiple facilities, Ms. Lewis received approximately $75,000-$80,000 from elementary fraud methods.

While *Valdez* involved somewhat different conduct (financial transfers versus document fraud), the principle remains controlling: sophisticated means requires more than concealment inherent in fraud. Even in *Valdez's* extraordinarily complex underlying scheme, the Court reversed the enhancement because the concealment methods were routine and transparent. Here, the document alterations represent the most basic concealment methods inherent in loan fraud—no more sophisticated than the routine financial movements rejected in *Valdez.*

### 2. Each Method Identified by the District Court Represents Ordinary Document Fraud Inherent in Loan Applications

The district court's application of the sophisticated means enhancement fails because each identified method represents routine fraud conduct typical of loan applications, not the "especially complex or especially intricate offense conduct" required by the Guidelines. U.S.S.G. § 2B1.1 cmt. n. 9(B).

### a. The False Schedule C Form

The false Schedule C form submitted by Ms. Lewis claimed gross receipts of $140,568.32 while her actual filing showed only $5,712. ROA.157. Creating false tax documents for loan applications represents standard documentation fraud requiring no special expertise beyond ordinary document alteration. Submitting inflated income figures on tax forms is among the most common methods of loan fraud and involves no complexity beyond basic falsification. This conduct parallels the routine fraud methods rejected in *Valdez*, where even systematic medical billing fraud involving complex procedural deception was insufficient to support sophisticated means when the concealment methods were basic. 726 F.3d at 695. Ms. Lewis's document alteration involves no complexity beyond

18

changing numbers on a form—conduct far simpler than the elaborate medical deception in *Valdez* that still failed to warrant the enhancement.

### b.   Writing "Payroll" on Personal Checks

Writing checks to oneself and labeling them "payroll" represents elementary fraud concealment lacking any complexity. This conduct falls far short of the multi-layered schemes this Court has required for sophisticated means. Unlike *Miller*, where the defendant employed numerous interconnected methods including false bookkeeping entries, forged signatures, continuous account movements, and opening new accounts when banks became suspicious, 906 F.3d at 380-81, Ms. Lewis's conduct involved no such complex financial maneuvering or sustained evasion efforts—just basic document alterations typical of loan fraud.

### c.   Late Business Registration

Registering Perfect Memories Travel three months after the initial loan application represents minimal administrative effort that falls far short of the "fictitious entities" or "corporate shells" contemplated by the Guidelines commentary. U.S.S.G. § 2B1.1 cmt. n. 9(B). More significantly, the late registration actually made the fraud more detectable by creating a suspicious timeline easily discovered during

investigation. This contrasts sharply with truly sophisticated schemes that make detection more difficult. The single administrative filing pales in comparison to *Valdez's* multi-clinic operation with trained employees systematically billing for different procedures than those performed.

### 3.    Ms. Lewis Was a Facilitator, Not the Architect of Any Sophisticated Elements

The record establishes that "Ms. Wiggins, and Ms. Wiggins only, concocted the false financial information submitted in/with the loan applications." ROA.319. Ms. Lewis's role was essentially mechanical—providing her residence and computer for Ms. Wiggins to submit applications and collecting kickbacks for assistance.

The contrast with truly sophisticated masterminds is stark. Anthony Valdez was a psychiatrist who operated a complex scheme involving training employees to perform specific medical procedures while billing for different ones, systematically deceiving medical reviewers, and coordinating fraudulent billing across multiple clinics. *Valdez*, 726 F.3d at 687-88. Yet even that level of organizational sophistication could not support the enhancement when the concealment methods were routine. Here, the sophisticated elements of any scheme were devised by the deceased mastermind, while Ms. Lewis served

merely as a facilitator using basic methods far simpler than those rejected in *Valdez*.

### 4. The District Court's Analysis Improperly Conflated Any Concealment with Sophisticated Means

The district court's reasoning that the conduct "made it more difficult to detect the scheme" conflates any form of concealment with sophisticated means. ROA.159. However, *Valdez* definitively established that sophistication requires more than mere concealment inherent in fraud. 726 F.3d at 695.

The *Valdez* decision is particularly instructive because it involved a defendant who engaged in systematic concealment through false medical billing, employee training in deceptive practices, and elaborate efforts to hide the true nature of medical procedures from insurance reviewers—yet the Court still reversed the sophisticated means enhancement because the financial concealment methods were "open and transparent." *Id.* If *Valdez's* complex medical fraud with systematic employee training, multi-clinic operations, and elaborate procedural deception could not support sophisticated means based on routine financial movements, then Ms. Lewis's elementary document alterations and basic check mislabeling certainly cannot.

The enhancement demands "some means of execution that separates the offense before us from the ordinary or generic." *Jinwright*, 683 F.3d at 486. Ms. Lewis's conduct falls squarely within the "ordinary or generic" category of PPP fraud—basic document falsification and elementary fund mislabeling typical of benefit fraud schemes.

### 5. The District Court's Internal Contradiction Demonstrates Clear Error

The district court's characterization of the scheme as "remarkably simple in approach" from Lewis's limited perspective, ROA.159, undermines the finding that her specific conduct involved "especially complex or especially intricate offense conduct." U.S.S.G. § 2B1.1 cmt. n. 9(B). The court's own assessment confirms that Lewis employed basic, not sophisticated, methods.

A scheme cannot simultaneously be "remarkably simple" and involve "especially complex or especially intricate offense conduct" as required by the Guidelines. U.S.S.G. § 2B1.1 cmt. n. 9(B). This internal contradiction demonstrates the clear error in the court's analysis, particularly when contrasted with *Valdez* where the Court reversed the enhancement despite underlying fraud far more complex than anything in Ms. Lewis's "remarkably simple" scheme.

When the undisputed facts are properly analyzed under the Guidelines definition and controlling precedent, they demonstrate routine fraud concealment methods that do not warrant the sophisticated means enhancement. Ms. Lewis's conduct involved basic document falsification and elementary concealment—conduct even simpler than the routine financial methods that *Valdez* held insufficient for sophisticated means enhancement despite the presence of a highly complex underlying fraud scheme.

### D. The Erroneous Enhancement Requires Remand Because the Error Is Not Harmless

The district court's procedural error in calculating the Guidelines range requires a remand unless the government can establish that the error was harmless. *See United States v. Harris*, 821 F.3d 589, 607 (5th Cir. 2016). Establishing harmless error is a "heavy burden" that requires proving that the "sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation." *United States v. Ibarra-Luna*, 628 F.3d 712, 717, 719 (5th Cir. 2010).

The government can establish harmless error if the wrong Guidelines range is employed in two ways. First, the government can "show that the district court considered both ranges (the one now found

incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017). Second, where the district court did not consider the correct Guidelines range, the Government must "convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Redmond*, 965 F.3d 416, 420 (5th Cir. 2020) (internal quotation marks omitted) (quoting *Ibarra-Luna*, 628 F.3d at 714), *cert. denied*, 141 S. Ct. 1411 (2021).

The Government cannot meet its heavy burden here. The imposed sentence of 27 months was at the bottom of the guideline range of 27 to 33 months. Without application of the sophisticated means enhancement, the correct guideline range would have been 21 to 27 months. A sentence at the bottom of the correct range would be 21 months—six months lower than the imposed sentence. This significant difference makes the enhancement outcome-determinative.

The court never stated at sentencing that it had considered both guideline ranges and would impose the same sentence regardless of the

enhancement. The court's placement of the sentence at the bottom of the calculated range suggests it was guided by the Guidelines calculation, making the six-month difference material to the sentencing outcome. Under these circumstances, the Government cannot convincingly demonstrate that the district court would have imposed the same 27-month sentence had it calculated the correct guideline range of 21 to 27 months.

## CONCLUSION

For the foregoing reasons, Appellant Shaquaila Lewis respectfully requests that this Court reverse the district court's application of the sophisticated means enhancement and remand for resentencing within the correct Guidelines range.

Respectfully submitted,

REBECCA L. HUDSMITH
Federal Public Defender

BY:    *s/ Dustin C. Talbot*
DUSTIN C. TALBOT
Appellate Chief
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

*Attorney for the Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has this day been served by the 5th Circuit electronic filing system on the Assistant United States Attorney, on June 27, 2025.

*<u>s/Dustin C. Talbot</u>*
DUSTIN C. TALBOT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,057 words.

2.  This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century typeface with a 14 point font.

Lafayette, Louisiana, June 27, 2025.

*<u>s/Dustin C. Talbot</u>*
DUSTIN C. TALBOT
