No. 25-30104

# In the United States Court of Appeals
# for the Fifth Circuit

———————————

UNITED STATES OF AMERICA,

*Plaintiff–Appellee,*

v.

SHAQUAILA LEWIS,

*Defendant–Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
NO. 5:23-CR-67-SMH-MLH-1 (HICKS, J.)

———————————

**APPELLEE'S BRIEF FOR THE UNITED STATES**

———————————

ALEXANDER C. VAN HOOK
  Acting United States Attorney
  Western District of Louisiana

SETH D. REEG
  Assistant United States Attorney

JUSTIN M. WOODARD
  Assistant Chief
KATE E. HILL
  Trial Attorney
  Fraud Section, Criminal Division
  U.S. Department of Justice

MATTHEW R. GALEOTTI
  Acting Assistant Attorney General

SARAH E. EDWARDS
  Trial Attorney
  Fraud Section, Criminal Division
  U.S. Department of Justice
  1400 New York Ave., N.W.
  Washington, D.C. 20005
  (202) 913-4782
  sarah.edwards@usdoj.gov

## STATEMENT REGARDING ORAL ARGUMENT

The United States respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT......................................................i

TABLE OF AUTHORITIES..............................................................................iii

STATEMENT OF JURISDICTION ....................................................................1

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE.............................................................................1

        A.    Procedural History..........................................................1

        B.    Statement of Facts ..........................................................2

        C.    Ruling Under Review ......................................................7

SUMMARY OF ARGUMENT............................................................................7

ARGUMENT ....................................................................................................7

    I.    THE DISTRICT COURT APPROPRIATELY FOUND THAT
        LEWIS'S OFFENSE CONDUCT INVOLVED SOPHISTICATED
        MEANS BASED ON HER MULTIPLE STEPS TO CONCEAL
        HER FRAUDULENT SCHEME ..............................................7

        A.    Standard of Review..........................................................7

        B.    The District Court Did Not Clearly Err in Imposing the
            Enhancement for Sophisticated Means.............................8

CONCLUSION ................................................................................................22

CERTIFICATE OF SERVICE...........................................................................23

CERTIFICATE OF COMPLIANCE....................................................................24

# TABLE OF AUTHORITIES

Cases

*United States v. Charroux*, 3 F.3d 827 (5th Cir. 1993) ...................................................... 9, 10

*United States v. Clements*, 73 F.3d 1330 (5th Cir. 1996) ............................................9, 10, 16

*United States v. Connor*, 537 F.3d 480 (5th Cir. 2008).................................................. 13, 19

*United States v. Faulkner*, 598 F. App'x 301 (5th Cir. 2015) ...............................................13

*United States v. Goins*, No. 3:22-CR-185-1, 2024 WL 3887278 (5th Cir. 2024) ........ 13, 16

*United States v. Jinwright*, 683 F.3d 471 (4th Cir. 2012) ............................................... 10, 11

*United States v. Malfitano* 690 F. App'x 218 (5th Cir. 2017) ...............................................13

*United States v. Miller*, 906 F.3d 373 (5th Cir. 2018) ...................................................*passim*

*United States v. Spalding*, 894 F.3d 173 (5th Cir. 2018)......................................................8

*United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013) ...................................................*passim*

*United States v. Wright* 496 F.3d 371 (5th Cir. 2007) ....................................... 11, 12, 18, 19

Statutes

18 U.S.C. § 1343. ..................................................................................................................1

18 U.S.C. § 1956(a)(1)(B)(i). ...............................................................................................1

18 U.S.C. § 3231 ...................................................................................................................1

18 U.S.C. § 3742(a) ..............................................................................................................1

28 U.S.C. § 1291 ...................................................................................................................1

Sentencing Guidelines

U.S.S.G. § 2B1.1(b)(10)(C) ...........................................................................................*passim*

U.S.S.G. § 2B1.1 cmt. n.9(B) ................................................................8

U.S.S.G. § 3B1.2 ................................................................................19

Rules

Fed. R. App. P. 4(b)(1)(A)(i) ...............................................................1

## STATEMENT OF JURISDICTION

Defendant Shaquaila Lewis appeals the final judgment of conviction in a criminal case. The district court (Hicks, J.), which had jurisdiction pursuant to 18 U.S.C. § 3231, entered judgment on February 14, 2025, ROA.65-70, and entered an amended final judgment on March 5, 2025, ROA.83-88. Lewis filed a timely notice of appeal on February 24, 2025. ROA.81; *see* Fed. R. App. P. 4(b)(1)(A)(i). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

Whether the district court clearly erred in imposing a sentencing enhancement for sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C).

## STATEMENT OF THE CASE

Lewis pleaded guilty to wire fraud for her role in submitting fraudulent loan applications and other documentation, as well as fraudulent applications for loan forgiveness, to the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") Program during the COVID-19 pandemic. She now appeals her sentence of 27 months' imprisonment.

A.     Procedural History

A federal grand jury returned an indictment charging Lewis with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and five counts of concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). ROA.12-25. Lewis pleaded guilty to one count of wire fraud. ROA.213-218, 221-223. The district court sentenced

Lewis to 27 months in prison and ordered $667,309.00 in restitution to the Small Business Administration ("SBA") and three financial institutions.  ROA.84-87.

### B.    Statement of Facts

#### 1.    The CARES Act

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act provided emergency financial assistance to Americans during the COVID-19 pandemic.  ROA.221.  One source of relief, the PPP, authorized forgivable loans to small businesses for job retention and certain other expenses.  ROA.221.  Another avenue of relief, the expanded EIDL Program, provided low-interest financing to small businesses affected by declared disasters.  ROA.222.  Under the CARES Act, the SBA provided EIDL loans to small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  ROA.222.

#### 2.    Lewis's Offense Conduct

Between May 2020 and May 2021, Lewis and another individual devised and executed a scheme to defraud the SBA and financial institutions that provided PPP and EIDL loans.  ROA.163-164, 271-276.[1]  In total, Lewis submitted and caused the submission of 17 fraudulent PPP and EIDL loan applications, resulting in at least $1,196,588 in loan proceeds paid to Lewis, her husband, and other individuals that Lewis recruited to submit fraudulent applications.  ROA.271-276.

---

[1] This individual died in a car accident and was not prosecuted.  ROA.163-164.

Two of the fraudulent loan applications listed Lewis's purported travel agency, Perfect Memories Travel, LLC. ROA.272-274. In the first PPP application filed in May 2020, Lewis provided an IRS Schedule C Form 1040 stating that Perfect Memories had earned $140,568.32 in gross receipts in 2019. The actual form filed with the IRS stated that Perfect Memories had earned only $5,712. ROA.272. Three months after Lewis submitted this application, Perfect Memories registered with the Louisiana Secretary of State. ROA.272. Lewis spent the proceeds of this PPP loan on personal expenses, including subscription services and gambling. ROA.272.

Lewis signed and submitted the second Perfect Memories PPP application on February 14, 2021. ROA.222. Lewis falsely certified that all the information was true and accurate, including that the loan funds would be used "to retain workers and maintain payroll" and that she used the prior PPP loan only for eligible expenses. ROA.222. Lewis spent the proceeds of the second loan on personal expenses, including subscription services and home renovations. ROA.224. On at least five occasions between June 2020 and April 2021, Lewis deposited checks written to herself with the notation "payroll" in an effort to launder the loan proceeds. ROA.274.

Three more fraudulent loan applications were submitted in Lewis's or her husband's name for other purported businesses. ROA.272-274. In September 2020, Lewis received loan proceeds from a fraudulent EIDL application. ROA.274. The business listed on the application was not registered with the Louisiana Secretary of State at the time of the application's submission. ROA.274. Moreover, this application

listed a fraudulent Employment Identification Number ("EIN"). ROA.274. Proceeds from this EIDL loan and the two PPP loans in her husband's name were used for personal expenses, including subscription services, fast food, and gambling. ROA.272-274.

Lewis submitted or caused the submission of 12 other PPP loan applications in the names of various individuals whom Lewis approached and for whom she offered to file fraudulent applications—including an individual referred by Lewis's sister. ROA.163-164, 272-274. These individuals provided their personal identifying information, but did not sign the loan documentation. ROA.272-274. In exchange for submitting the applications, Lewis received a kickback of the loan proceeds in the form of a cashier's check or cash. ROA.273. In one instance, Lewis told the loan recipient that she owed Lewis 10 percent of the loan proceeds. ROA.274. Several applications included fraudulent tax documentation, such as a falsified Schedule C Form 1040, false W-3 form or a fraudulent EIN. ROA.272-274.

### 3.    Lewis Pleads Guilty

As part of her plea agreement, Lewis pleaded guilty to devising a scheme and artifice to defraud the SBA and various financial institutions by falsifying PPP and EIDL Program loan applications and other documents, submitting fraudulent loan applications, obtaining payments based on fraudulent loan applications, and submitting fraudulent applications for loan forgiveness. ROA.222. In the written factual basis supporting her plea, Lewis admitted that on February 14, 2021, she electronically

submitted a false and fraudulent PPP application for Perfect Memories to a financial institution seeking $20,833 in PPP funds. ROA.222. Lewis signed this application and falsely certified that all the information provided was true and accurate, including that the funds would be used "to retain workers and maintain payroll" and that she used the prior PPP loan only for eligible expenses. ROA.222. In fact, Lewis used the funds for personal expenses. ROA.222-223.

During the change-of-plea hearing, Lewis admitted that she "received the PPP loan and it was illegally submitted by someone else, but I received the funds and I spent it." ROA.128. Lewis then confirmed that she had reviewed the factual basis and that it was accurate. ROA.131. After a Rule 11 colloquy, the district court accepted the plea. ROA.128-151.

4.     The Presentence Report

The Probation Office determined in its Presentence Investigation Report ("PSR") that Lewis's Guidelines range was 27 to 33 months' imprisonment, reflecting an offense level of 18 and a criminal history category of I. ROA.251. This calculation included a two-level increase because the offense involved sophisticated means and Lewis intentionally engaged in or caused the conduct constituting sophisticated means (U.S.S.G. § 2B1.1(b)(10)(C)). ROA.244-245. In recommending this enhancement, the PSR found that Lewis used "multiple fraudulent tax documents including Schedule C forms, W-3's, and fictitious Employer Identification Numbers to request PPP loans and an EIDL." ROA.277.

5.     Lewis's Sentencing Hearing

At sentencing, Lewis objected to the sophisticated means enhancement. ROA.156.  The district court reviewed the steps taken by Lewis to conceal the fraud, including the "fictitious IRS 2019 Schedule C tax form" showing inflated receipts for Perfect Memories, the "fake payroll checks" Lewis wrote herself "to conceal the fraudulent nature of the funds and enable her to fraudulently apply for the loan forgiveness feature," and the fact that Perfect Memories "was not registered with the Louisiana Secretary of State" until several months after the initial PPP application "in an effort to make the company appear legitimate."  ROA.157-158.

The court overruled Lewis's objection, noting that "the sophisticated means here appears to be remarkably simple in approach" but did require "changes to various documents," "filing after the fact on a corporate name," and the other items detailed in government's sentencing memorandum.  ROA.159.  The court explained that Perfect Memories' "register[ation] … after the first draw" was an effort to conceal the offense, as were the "fake checks written to herself noted as payroll."  ROA.159.  The court found that "these efforts of concealment" made it more difficult to detect the scheme and warranted the sophisticated means enhancement.  ROA.159.  The court further adopted PSR's factual findings and recommended Guidelines range.  ROA.160, 175.  The court then sentenced Lewis to 27 months' imprisonment.  ROA.176.

C.    Ruling Under Review

Lewis challenges the district court's application of the sophisticated means enhancement, ROA.157-159; *see* Br. 10-23.

## SUMMARY OF ARGUMENT

Lewis's 27-month sentence should be affirmed.  The district court did not clearly err in applying the sophisticated means enhancement under Guidelines § 2B1.1(b)(10)(C) based upon the multiple steps that Lewis took to conceal her underlying PPP and EIDL fraud scheme.

## ARGUMENT

## I.    THE DISTRICT COURT APPROPRIATELY FOUND THAT LEWIS'S OFFENSE CONDUCT INVOLVED SOPHISTICATED MEANS BASED ON HER MULTIPLE STEPS TO CONCEAL HER FRAUDULENT SCHEME

Lewis contends (Br. 10-23) that the district court clearly erred in applying the sophisticated means enhancement to her conduct, which she characterizes as elementary document fraud typical of loan applications.  Br. at 10.  Because Lewis took specific steps to conceal her fraudulent scheme that were separate from the underlying fraud and because those steps made it more difficult to detect her fraud, the district court's sophisticated means finding is amply supported.  No clear error occurred.

A.    Standard of Review

This Court reviews for clear error the district court's sophisticated means finding. *United States v. Miller*, 906 F.3d 373, 376-77 (5th Cir. 2018) (citations omitted).  "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole."

*United States v. Spalding*, 894 F.3d 173, 190 (5th Cir. 2018) (citing *United States v. Nava*, 624 F.3d 226, 229 (5th Cir. 2010). This Court will only find clear error "if, based on the entire evidence, the court is left with a definite and firm conviction that a mistake has been committed." *Id.*

> B.  The District Court Did Not Clearly Err in Imposing the Sentencing Enhancement for Sophisticated Means

> 1. The Record Supported the Enhancement for Sophisticated Means

Sentencing Guidelines § 2B1.1(b)(10)(C) provides for a two-level enhancement when the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." This enhancement applies to "especially complex or especially intricate offense conduct" and may be part of either "the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n.9(B). When a defendant hides "assets or transactions, or both" through "fictitious entities, corporate shells, or offshore financial accounts" such conduct "ordinarily indicates sophisticated means." *Id.*

While fictitious entities, corporate shells, or offshore accounts are examples of sophisticated means, they are not prerequisites. If the defendant used means that "made it more difficult for the offense to be detected, even if that method was not itself particularly sophisticated" this Court has upheld the use of the enhancement. *Miller*, 906 F.3d at 380 (quoting *United States v. Valdez*, 726 F.3d 684, 695 (5th Cir. 2013)). Where a defendant uses "multiple methods" to make it more difficult to detect the

underlying fraud, this Court considers whether the "overall conduct" merits the enhancement.  *Id.*

Here, Lewis used false tax documentation, wrote herself fake payroll checks, and registered Perfect Memories between her first and second PPP applications to make it appear to be a legitimate business.  In combination, these steps made Perfect Memories appear to be a business worthy of multiple forgivable PPP loans—making Lewis's fraud more difficult to detect and supporting the district court's sophisticated means finding.

A pair of tax cases decided 30 years ago informs this Court's case law on sophisticated means: *United States v. Charroux*, 3 F.3d 827 (5th Cir. 1993), and *United States v. Clements*, 73 F.3d 1330 (5th Cir. 1996).[2]  The defendants in *Charroux* structured "land flip" transactions to obscure where the funds ended up and sought advice from tax professionals to "lend the appearance of legitimacy" to their dealings, while withholding critical information from those same professionals.  3 F.3d at 837.  In affirming the district court's sophisticated means finding, this Court contrasted the defendants' conduct with a case involving a taxpayer who merely completed "his individual 1040 form with false information to avoid paying some of his federal taxes." *Id.*  (quoting *United States v. Jagim*, 978 F.2d 1032, 1042 (8th Cir. 1992)).  The Court

---

[2] In both cases, the sophisticated means enhancement was specific to tax cases: the since-eliminated § 2T1.3(b)(2) in *Charroux*, 3 F.3d at 826, and § 2T1.1(b)(2) in *Clements*, 73 F.3d at 1340.  Notwithstanding that distinction, this Court's decisions have cited both cases when interpreting the sophisticated means enhancement in § 2B1.1.  *See, e.g.*, *United States v. Valdez*, 726 F.3d 684, 695 (5th Cir. 2013).

found the enhancement was appropriate in *Charroux* because the defendants took additional steps—beyond the foundational lie needed to commit tax fraud—to conceal their scheme.

Likewise, in *Clements*, the defendant failed to pay payroll taxes for his businesses and faced an IRS lien against his architecture firm. 73 F.3d at 1334. He then concealed income—that should have been subject the IRS lien—by entering a separate personal contract with one architecture customer, converting the checks received from that customer into cashier's checks, and depositing them into his wife's bank account. *Id.* at 1340. While the defendant's "transactions did not involve the use of offshore bank accounts or fictitious entities," his use of multiple cashier's checks and his wife's bank account did "undeniably" make it "more difficult for the IRS to detect his evasion." *Id.* This Court held that the defendant's conduct went beyond presenting false information on a tax form to avoid paying taxes, and thus the district court's sophisticated means enhancement was not clearly erroneous. *Id.* (citing *Charroux*, 3 F.3d at 837).

This animating principle—that sophisticated means includes conduct beyond the foundational lie that makes it more difficult to detect the fraud—validates the district court's application of the enhancement here.[3] Lewis's wire fraud scheme required lying

---

[3] *United States v. Jinwright*, cited by Lewis, is not to the contrary. 683 F.3d 471 (4th Cir. 2012). In that tax case, the Fourth Circuit stated that failure to accurately report income "would not alone support imposition of the sophisticated means enhancement." *Id.* at 486. While the enhancement requires "some means of execution that separates the offense before us from the ordinary or generic," (Br. at 14), the Fourth Circuit explained that the sentencing court "need only find 'the presence of efforts at concealment that

on the PPP and EIDL applications. But Lewis also submitted a falsified tax form in support of her first Perfect Memories PPP application, wrote herself fake payroll checks, and belatedly registered Perfect Memories with the Louisiana Secretary of State "in an effort to make the company appear legitimate." ROA.157-158. Moreover, Lewis used "multiple fraudulent tax documents including Schedule C forms, W-3s, and fictitious Employer Identification Numbers to request PPP loans and an EIDL." ROA.175 and 227.

This aggregate conduct, like the conduct at issue in Lewis's cited cases (Br. 14-15), is "something more than an 'open and transparent direct deposit and movement of funds,' and closer to the conduct of defendants in cases where similar enhancements were upheld." *Miller*, 906, F.3d at 380 (citations omitted).

In *United States v. Wright*, the defendant used funds deposited in his own account to purchase cashier's checks in the names of mortgage applicants for closing costs. 496 F.3d 371, 378-79 (5th Cir. 2007). These cashier's checks made it appear to the lender that the mortgage applicant supplied those funds, when in fact the defendant had. *Id.* at 379. The district court concluded that the use of the cashier's checks was not "extremely sophisticated" but was "sufficiently sophisticated beyond the base kind of offense that we ought to add on the two points." *Id.* This Court affirmed, holding that

---

go beyond (not necessarily far beyond . . .) the concealment inherent in tax fraud." *Id.* (quoting *United States v. Kontny,* 238 F.3d 815, 821 (7th Cir. 2001)).

the use of the cashier's checks "are means as sophisticated as those in *Clements*, at least as part of a scheme to defraud a mortgage broker." *Id.*

Similarly, in *Miller*, an accounts payable clerk stole more than $2 million from her employer by fraudulently writing checks to her boyfriend—whom she falsely represented was a vendor—and attempting to conceal the fraudulent checks as regular business expenses; she ultimately pleaded guilty to bank fraud. 906 F.3d at 375-76. In affirming the district court's sophisticated means enhancement, this Court stated that although "some aspects of [the defendant's] scheme were not sophisticated, viewing the scheme in its entirety, it was not clearly erroneous for the district court to conclude that [her] overall conduct warranted the sophisticated means enhancement." *Id.* at 380. The defendant attempted to make the fraudulent checks appear legitimate by forging the office manager's signature and listing the checks alongside authorized checks on lists sent to the bank. *Id.* She also attempted to obscure her connection to the fraudulent checks by issuing them to her boyfriend and depositing them in an after-hours bank drop box. *Id.* While each of these steps on their own may not have been the most sophisticated, the "multiple methods" that the defendant employed together "made it more difficult to detect her bank fraud" and supported the enhancement. *Id.*

The same is true here. One might separate each of Lewis's concealment efforts into discrete units and characterize each as unsophisticated. But *Miller* condemns this divide-and-conquer approach. Lewis's multiple methods, when considered in their totality, came together to make Perfect Memories—which, prior to the pandemic was

an unregistered entity with a few thousands dollars in revenue—appear to be a fully-fledged business deserving tens of thousands of dollars of COVID-19 relief. The district court's finding that the steps Lewis took "made it more difficult to detect the scheme," was consistent with this Court's case law. ROA.159.

Following *Wright* and *Miller*, this Court has consistently affirmed a district court's sophisticated means finding so long as the defendant employed methods of deception that made the underlying fraudulent scheme more difficult to detect. *See United States v. Connor*, 537 F.3d 480, 492-93 (5th Cir. 2008) ("conspirators used fake IDs to obtain goods using business accounts, and then the goods were sold on eBay"); *United States v. Malfitano*, 690 F. App'x 218, 219 (5th Cir. 2017) (defendant "provided his true identity" but "attempted to avoid detection and to conceal the fraudulent nature of the transactions" and to "legitimize the proceeds distributed to him through his company"); *United States v. Faulkner*, 598 F. App'x 301 (5th Cir. 2015) (defendant "created fictitious room revenue credits using the [hotel's] house account and issued these refunds to her personal accounts"); *United States v. Goins*, No. 3:22-CR-185-1, 2024 WL 3887278, at *2-3 (5th Cir. 2024) (defendant used his car dealership "to lend the appearance of legitimacy to the unauthorized credit card transactions and bankruptcy filing").

Lewis likewise took additional steps beyond those required for the underlying fraud and the district court articulated how those steps concealed her fraud. The court's sophisticated means finding is therefore not clearly erroneous.

### 2. Lewis's Contrary Arguments Lack Merit

#### a. The Enhancement Here Is Consistent with *Valdez*

The district court's application of the sophisticated means enhancement is consistent with *United States v. Valdez*, 726 F.3d 684, 695 (5th Cir. 2013), upon which Lewis relies.

The defendant in *Valdez* was convicted of healthcare fraud and money laundering based on his operation of pain clinics at which he and his employees performed one type of injection but billed federal health care programs for other injections. *Id.* at 687-88. At sentencing, the district court applied the sophisticated means enhancement based on the investigation's conclusion that the defendant was "attempting to hide assets by depositing proceeds from the fraudulent billing scheme into his investment accounts." *Id.* at 695.

This Court explained that "[w]e have affirmed the application of the sophisticated means enhancement in cases involving some method that made it more difficult for the offense to be detected, even if that method was not by itself particularly sophisticated." *Id.* It then rejected the use of the sophisticated means enhancement where the "sole reason given" was that the defendant moved proceeds of his healthcare fraud scheme, which Medicare had deposited into his operating account, into his investment accounts. *Id.* at 695. Both the operating account and the investment accounts were in the defendant's name. *Id.* Because there was "no indication that this open and transparent direct deposit and movement of funds involved sophisticated

means or could have made it more difficult for [the defendant's] offense of health care fraud to be detected," the Court held that it was error to apply the enhancement. *Id.*

Lewis's contention that *Valdez* "reversed a sophisticated means enhancement *despite* the defendant operating an elaborate healthcare fraud involving multiple clinics, sophisticated medical procedures, and extensive concealment efforts" (Br. at 12, emphasis added) misses the point. Neither the clinics, the medical procedures, the false patient encounter forms, or the deception of medical reviewers (Br. at 12-13) were the *basis* for the sophisticated means enhancement. The "sole reason given" for the enhancement in *Valdez* was the transfer of funds between accounts in the defendant's name.

The district court here, in contrast, cited Lewis's use of fraudulent tax documents, fake payroll checks, and after-the-fact registration of her purported travel agency. The district court here fairly found that these multiple steps to conceal her fraud supported the sophisticated means enhancement whereas the defendant's funds transfers in *Valdez* did not.

> b. Lewis's Multiple Methods of Deception Must Be Considered Together

Lewis also argues that each method of concealment relied upon by the district court—the false tax documentation, fake payroll checks, and after-the-fact corporate registration—is "routine fraud conduct" and each on its own fails to trigger the sophisticated means enhancement. Br. 18-20. But this Court's case law considers

whether the defendant's "overall conduct" constituted sophisticated means. *Miller*, 906 F.3d at 380; *see also Connor*, 537 F.3d at, 492 (affirming enhancement where aspects of the fraud "taken together" demonstrated "that the district court did not clearly err in finding that the crime involved sophisticated means").

The enhancement is warranted where a defendant "employed multiple methods that made it more difficult to detect" the underlying fraud, and the methods are considered together, not in isolation. *Miller*, 906 F.3d at 380. Taken together, Lewis's various steps to conceal her fraud increased the difficulty of detecting it and make the district court's finding more than "plausible in light of the record as a whole." *Clements*, 73 F.3d at 1340; *see also United States v. Goins*, No. 3:22-CR-185-1, 2024 WL 3887278, at *2 (5th Cir. 2024) ("this is not a case like *Valdez*, where the defendant simply 'took money directly deposited' into his account and moved the funds into another account under his name" but the means used to perpetuate the fraud "when considered together, were more advanced."). The district court correctly considered Lewis's "efforts of concealment" together in applying the enhancement. ROA.158-159.

Moreover, Lewis's arguments with respect to each individual concealment method miss the mark. She erroneously focuses on the difficulty of executing the individual step rather than the question of whether the step helped conceal the fraud. First, with respect to the falsified Schedule C form, Lewis claims that inflating income figures on tax documentation is common in loan fraud and parallels the "routine fraud

methods" rejected in *Valdez*. Br. at 18.[4]  But the transactions in *Valdez* did not involve any falsification: the defendant moved funds between multiple accounts in his own name.  *See* 726 F.3d at 695.  Here, Lewis's falsification of the tax documentation submitted with the fraudulent loan application represented additional deception that made it more difficult to detect the fraudulent loan scheme.

Next, Lewis argues that the fake payroll checks she wrote to herself fell "far short" of multi-layered schemes this Court has required and involved no "complex financial maneuvering or sustained evasion efforts." Br. at 19.  Again, while this method may not have been "particularly sophisticated," it made it "more difficult for the offense to be detected," *Valdez*, 726 F.3d at 695, especially in combination with Lewis's other concealment efforts.  ROA.159.  In addition, the payroll checks reflected a sustained evasion effort—Lewis wrote herself multiple fake checks over a 10-month period. ROA.242.

Finally, Lewis argues that the after-the-fact registration of Perfect Memories was a "minimal administrative effort" that made the fraud more detectable because it created a suspicious timeline.  Br. 19-20.  Perfect Memories could reasonably be considered a fictitious entity or corporate shell.  When Lewis first applied for a

---

[4] As explained above, the "elaborate medical deception" in *Valdez*, Br. at 19, is not the correct comparison.  It was the transfers between defendant's accounts, and not the medical deception, that formed the basis for the sophisticated means enhancement rejected in *Valdez*.  726 F.3d at 695.

fraudulent PPP loan in May 2020, Perfect Memories had gross receipts of less than $6,000 for the previous year and was not a registered business. The district court reasonably inferred that Lewis's registration of the company a few months later was an attempt to make her hobby or side business appear as an actual bona fide business worthy of tens of thousands of dollars in forgivable loans. The court's factual findings that Lewis registered Perfect Memories "in an effort to make the company appear legitimate" and to "help conceal the offense" were not clearly erroneous. ROA.158-159.

In sum, each of these methods was an additional step that Lewis took to conceal the fraud scheme beyond false representations on a loan application. Taken together, they provide sufficient ample support for the district court's sophisticated means finding. The court's application of § 2B1.1(10)(C) was not clearly erroneous.

c. The District Court's Comments Do Not Negate Its Valid Finding

Lewis repeatedly cites the district court's comment that the sophisticated means in this case were "remarkably simple in approach." Br. at 9, 17, 22. But the court's remarks about the relative simplicity of Lewis's scheme do not negate its valid finding that the sophisticated means enhancement applied on this record.

Notably, these comments mirror those in *Wright* where the district court noted that "it's not rocket science or brain surgery, but I think it does show a level of sophistication sufficient to trigger additional punishment." 496 F.3d at 379. "[P]ointing to the court's own tepid language" will not create clear error where there is none. *Id.*

18

Indeed, this Court affirmed the enhancement—based upon the defendant's purchase of cashier's checks in borrower's names to pay closing costs—notwithstanding the district court's remarks. *Id.*; *see also Miller*, 906 F.3d at 380 (affirming application of the sophisticated means enhancement when "some aspects of Miller's scheme were not sophisticated"); *Connor*, 537 F.3d at 492 (affirming use of enhancement although "[t]his was not the most sophisticated fraud").

The same result follows here. The district court's observation that Lewis's conduct was "simple" does not contradict the court's finding that the enhancement was warranted when Lewis's methods served to conceal her scheme and went beyond what was inherent in basic PPP and EIDL fraud. In particular, she wrote fake payroll checks, submitted falsified tax documents, and registered the business listed on her loan application with the Secretary of State after the fact to make it appear more legitimate. While one can hypothesize more sophisticated efforts, the district court did not clearly err in finding that these steps qualified as sophisticated means under this Court's cases.

### d. The Coconspirator's Involvement Does Not Negate the District Court's Sophisticated Means Finding as to Lewis's Conduct

Lewis characterizes (Br. 20-21) herself as the "facilitator" and not the "architect" of the scheme. To the extent that Lewis suggests she was a minor participant, she failed to request a mitigating role reduction under Guidelines § 3B1.2.[5] In all respects, this

---

[5] Lewis's sentencing memorandum urged "a variance which would reflect" her lesser role. ROA.330-31.

portrayal sidesteps the question whether the district court clearly erred in finding sophisticated means based on the methods Lewis used to conceal her fraud scheme.

Guidelines § 2B1.1(b)(10)(C) requires that "the defendant intentionally engaged in or caused the conduct constituting sophisticated means." Here, Lewis indisputably wrote herself the fake payroll checks and registered Perfect Memories with the Louisiana Secretary of State months after her initial fraudulent PPP application. ROA.158-159; Br. at 10-23.

Lewis disputes whether she or her coconspirator created the false tax documents. Br. at 20. But Lewis overstates the record in claiming that "Ms. Wiggins, and Ms. Wiggins only, concocted the false financial information submitted in/with the loan applications." Br. at 20 (citing ROA.319). That quote is from Lewis's sentencing memorandum disputing the sophisticated means enhancement. ROA.319. At sentencing, the district court did not directly address whether Lewis or Wiggins created the fraudulent tax documentation submitted; it rather adopted the PSR's factual findings stating that "the defendant used multiple fraudulent tax documents including Schedule C forms, W-3's and fictitious Employer Identification Numbers to request PPP loans and an EIDL." ROA.245.

The record is accordingly silent as to who filled out the fraudulent tax documentation. But whether Lewis or her coconspirator *created* the fraudulent tax documents, the record is clear that Lewis *used* them. ROA.272-274. Lewis admitted, in her sentencing memorandum before the district court, that Lewis personally completed

loan forgiveness paperwork for the PPP loans knowing that the financial information submitted with her loan applications was false. ROA.318. That is, Lewis used the false tax documentation to avoid repaying the fraudulently-obtained loans, concealing the underlying fraud and supporting the district court's sophisticated means finding.

Finally, even if this Court were to hold that Lewis's use of the false tax documentation did not support the sophisticated means enhancement, this Court should affirm the sophisticated means finding on the basis of the fake payroll checks that Lewis wrote to herself over the course of almost a year and the late corporate registration, both "method[s] that made it more difficult for the offense to be detected" and thus independently support the enhancement for sophisticated means. *See Valdez*, 726 F.3d at 695.

* * *

The district court found that Lewis's efforts to conceal her fraud, taken together, warranted the sophisticated means enhancement under § 2B1.1(b)(10)(C). That finding was not clear error.

## CONCLUSION

For these reasons, this Court should affirm.

Respectfully submitted,

ALEXANDER C. VAN HOOK
    Acting United States Attorney
    Western District of Louisiana

MATTHEW R. GALEOTTI
    Acting Assistant Attorney General

SETH D. REEG
    Assistant United States Attorney

JUSTIN M. WOODARD
    Assistant Chief
KATE E. HILL
    Trial Attorney
    Fraud Section, Criminal Division
    U.S. Department of Justice

*/s/ Sarah E. Edwards*
SARAH E. EDWARDS
    Trial Attorney
    Fraud Section, Criminal Division
    U.S. Department of Justice
    1400 New York Ave., N.W.
    Washington, D.C. 20005
    (202) 913-4782
    sarah.edwards@usdoj.gov

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), the undersigned counsel of record certifies that the foregoing Answering Brief for the United States was this day served upon Dustin C. Talbot, counsel for Defendant-Appellant Shaquaila Lewis, by notice of electronic filing with the Fifth Circuit CM/ECF system.

DATED: August 27, 2025

*/s/ Sarah E. Edwards*

SARAH E. EDWARDS
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, DC 20005
(202) 913-4782
sarah.edwards@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Garamond 14-point type.

*/s/ Sarah E. Edwards*
SARAH E. EDWARDS
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, DC 20005
(202) 913-4782
sarah.edwards@usdoj.gov