In the
United States Court of Appeals
for the Fifth Circuit

___

No. 25-30104
___

UNITED STATES OF AMERICA,
              *Plaintiff - Appellee*,

v.

SHAQUAILA LEWIS,
              *Defendant - Appellant*
___

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 5:23-CR-67-1
___

REPLY BRIEF FOR THE APPELLANT
SHAQUAILA LEWIS
___

**REBECCA L. HUDSMITH**
Federal Public Defender

**DUSTIN C. TALBOT**
Appellate Chief
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

*Attorney for the Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES .......................................................................... ii

RE-STATEMENT OF THE ISSUE ............................................................... 1

    Whether the district court clearly erred in applying a two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(10)(C) for the use of sophisticated means when the defendant's conduct involved only elementary document falsification and basic concealment methods that fall within the ordinary fraud techniques inherent in PPP loan applications?

REPLY ARGUMENT ..................................................................................... 2

  I.   The government cannot overcome *Valdez* ................................. 2

 II.   The government's reliance on distinguishable Fifth Circuit cases fails to establish sophisticated means ............................. 4

      A.   The government's cited cases involved genuinely sophisticated conduct requiring specialized knowledge and coordination ............................................................. 5

      B.   The government's "multiple methods" argument fail to establish sophistication .................................................... 8

III.   The government waived any argument that the error below was harmless ........................................................................... 10

CONCLUSION ............................................................................................. 12

CERTIFICATE OF SERVICE ..................................................................... 13

CERTIFICATE OF COMPLIANCE ........................................................... 13

# TABLE OF AUTHORITIES

**CASES**                                                                                                                               **PAGE**

*United States v. Charroux*, 3 F.3d 827 (5th Cir. 1993) ............................. 6

*United States v. Clements*, 73 F.3d 1330 (5th Cir. 1996) ......................... 5

*United States v. Conner*, 537 F.3d 480 (5th Cir. 2008) ............................ 7

*United States v. Faulkner*, 598 F. App'x 301 (5th Cir. 2015) (unpublished) ............................................................................. 8

*United States v. Gallardo-Trapero*, 185 F.3d 307 (5th Cir. 1999) ......... 11

*United States v. Goins*, 2024 WL 3887278 (5th Cir. 2024) (unpublished) ............................................................................. 8

*United States v. Ibarra-Luna*, 628 F.3d 712 (5th Cir. 2010) .................. 10

*United States v. Malfitano*, 690 F. App'x 218 (5th Cir. 2017) (unpublished) ............................................................................. 8

*United States v. Miller*, 906 F.3d 373 (5th Cir. 2018) ........................... 8-9

*United States v. Pryce*, 938 F.2d 1343 (D.C. Cir. 1991) ......................... 11

*United States v. Thibodeaux*, 211 F.3d 910 (5th Cir. 2000) .................... 11

*United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013) .......................... 2-4

*United States v. Wright*, 496 F.3d 371 (5th Cir. 2007) ............................ 6

*Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993) ....................................... 11

**SENTENCING GUIDELINES**

U.S.S.G. § 2B1.1(b)(10)(C) ............................................................. *passim*

In the
United States Court of Appeals
for the Fifth Circuit

_____

No. 25-30104
_____

UNITED STATES OF AMERICA,
*Plaintiff - Appellee*,

v.

SHAQUAILA LEWIS,
*Defendant - Appellant*
_____

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 5:23-CR-67-1
_____

**REPLY BRIEF FOR THE APPELLANT
SHAQUAILA LEWIS**
_____

## RE-STATEMENT OF THE ISSUE

Whether the district court clearly erred in applying a two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(10)(C) for the use of sophisticated means when the defendant's conduct involved only elementary document falsification and basic concealment methods that

1

fall within the ordinary fraud techniques inherent in PPP loan applications?

## REPLY ARGUMENT

### I. The government cannot overcome *Valdez*

The government's attempt to distinguish *Valdez* ignores its controlling principle. The government argues that *Valdez* only applies to "transfer of funds between accounts in the defendant's name," Gov't Brief at 15, but this narrow reading ignores the broad rationale underlying the Fifth Circuit's reversal.

*United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013) established a fundamental principle that routine concealment methods cannot support sophisticated means enhancement, regardless of the complexity of the underlying fraud scheme. The Court emphasized that sophisticated means requires methods that are genuinely "especially complex or especially intricate," not merely concealment inherent in fraud. *Id.* at 695. The Court specifically noted that even in the context of an extraordinarily complex healthcare fraud involving multiple clinics, sophisticated medical procedures, and systematic billing deception, the

concealment methods must themselves be sophisticated to warrant enhancement.

The government's assertion that "[n]either the clinics, the medical procedures, the false patient encounter forms, or the deception of medical reviewers were the basis for the sophisticated means enhancement," Gov't Brief at 15, actually supports Ms. Lewis's position. If such elaborate fraud components cannot bootstrap routine concealment into sophistication, then Ms. Lewis's far simpler document alterations certainly cannot meet the required standard.

More fundamentally, the government misses *Valdez's* core teaching: "[T]here is no indication that this open and transparent direct deposit and movement of funds involved sophisticated means or could have made it more difficult for his offense of health care fraud to be detected." *Id.* at 695. The Court's analysis focused not only on transparency, but also on whether the concealment methods were genuinely complex or intricate beyond typical fraud. The "open and transparent" language merely described why those particular methods failed the sophistication test.

3

Ms. Lewis's document alterations fall within the same category of routine concealment that *Valdez* rejected. Creating false tax documents for loan applications represents standard documentation fraud requiring no special expertise beyond ordinary falsification. Indeed, there can be no fraudulent procurement of a loan without false and fraudulent representations in the loan application. Something more is required. This conduct is indistinguishable in principle from the routine financial movements that *Valdez* held insufficient to support the enhancement, despite the presence of highly complex underlying fraud.

The government's claim that Lewis's conduct involved "additional deception that made it more difficult to detect the fraudulent loan scheme," Gov't Brief at 17, ignores that *Valdez* rejected this exact rationale. Every fraud involves some concealment that makes detection more difficult. The enhancement requires something more: methods that are "especially complex or especially intricate." Lewis's basic document fraud cannot meet this heightened standard.

II. **The government's reliance on distinguishable Fifth Circuit cases fails to establish sophisticated means**

The government's cited Fifth Circuit decisions cannot overcome the fundamental problem that none involved conduct comparable to Lewis's

4

elementary document alterations. Each case the government cites involved genuinely sophisticated conduct that qualitatively distinguishes it from Lewis's basic loan fraud methods.

### A. The government's cited cases involved genuinely sophisticated conduct requiring specialized knowledge and coordination

The government's reliance on *United States v. Clements*, 73 F.3d 1330 (5th Cir. 1996), fails because that case involved sophisticated multi-layered financial concealment far beyond Lewis's elementary conduct. Gov't Brief at 10-11. In *Clements*, the defendant faced an IRS lien and responded by entering a separate personal contract with his customer to avoid the lien, then "converted [checks] into multiple cashier's checks" (sometimes as many as thirteen), and deposited them "into his wife's separate bank account to obscure the link between the money" and himself. *Id.* at 1340.

This conduct involved genuine sophistication requiring specialized knowledge: understanding how IRS liens operate, creating substitute contractual arrangements to avoid detection, coordinating with third parties (both his customer and his wife), and employing complex financial instruments (multiple cashier's checks) to break the evidentiary trail.

5

The Court specifically noted that the defendant's use of "multiple cashier's checks and his wife's separate bank account" served to "obscure the link between the money" and the scheme, creating genuine difficulty for investigators attempting to trace funds. *Id.* at 1340.

The same rings true of the government's citation to *United States v. Charroux*, 3 F.3d 827 (5th Cir. 1993). Gov't Brief at 10. *Charroux* involved defendants who "structured elaborate transactions to hide their revenues" through complex "land flip" schemes involving multiple parties, inflated property purchases, and coordination with tax professionals. *Id.* at 837. The sophistication lay in creating complex real estate transactions designed to generate profits while deceiving both regulators and tax professionals through systematic withholding of key information from their professional advisors.

The government's reliance on *United States v. Wright*, 496 F.3d 371 (5th Cir. 2007), Gov't Brief at 12, again demonstrates the qualitative difference between genuinely sophisticated conduct and Lewis's elementary methods. *Wright* involved a defendant who "used his own funds to purchase cashier's checks for closing costs in the names of the loan applicants, made copies of the same checks which were forwarded to

6

the lenders, then deposited the same cashier's checks into his account." *Id.* at 377-78. This required sophisticated coordination with multiple parties, understanding of how lenders verify creditworthiness, and precise timing of financial maneuvers to deceive multiple financial institutions simultaneously in order to close the real estate loan.

Similarly, *United States v. Conner*, 537 F.3d 480 (5th Cir. 2008), Gov't Brief at 13, involved defendants who traveled to 23 different states, using numerous fake means of identification to obtain goods via business accounts, before selling those goods through a fictitious name and business. *Id.* at 492. This conduct involved genuine sophistication requiring extensive planning, travel coordination, identity creation, and systematic operation across multiple jurisdictions.

By contrast, Lewis's conduct involved no such complexity. She altered basic tax documents by changing income figures, wrote checks to herself labeled "payroll," and registered a business three months late, ROA.271-75—creating no genuine concealment but actually making detection more likely due to the suspicious timeline. The government's argument that Lewis's conduct made detection "more difficult," Gov't Brief at 15, misses the qualitative distinction these cases established.

7

Unlike the genuine concealment achieved through complex financial maneuvering in the government's cited cases, Lewis's conduct created no such genuine concealment—any competent investigation would immediately discover the false tax documents and suspicious payroll checks.[1]

### B. The government's "multiple methods" argument fail to establish sophistication

The government's heavy reliance on *United States v. Miller*, 906 F.3d 373 (5th Cir. 2018), misapplies that decision to facts that fall far short of the sophisticated conduct required for enhancement. Gov't Brief

---

[1] The government's citation to several unpublished Fifth Circuit decisions fares no better, Gov't Brief at 13, and fail to establish that Lewis's conduct rises to sophisticated means. *United States v. Malfitano*, 690 F. App'x 218 (5th Cir. 2017) (unpublished), involved a defendant who "attempted to legitimize the proceeds distributed to him through his company"—conduct suggesting systematic business operations far beyond Lewis's elementary alterations. *United States v. Faulkner*, 598 F. App'x 301 (5th Cir. 2015) (unpublished), involved defendants who "created fictitious room revenue credits using the [hotel's] house account and issued these refunds to her personal accounts"—conduct requiring understanding of hotel accounting systems and creation of false business records within established systems. *United States v. Goins*, 2024 WL 3887278 (5th Cir. 2024) (unpublished), involved a defendant who used his car dealership "to lend the appearance of legitimacy to the unauthorized credit card transactions and bankruptcy filing," including depositing "two counterfeit checks worth $160,000 for purported car sales" and systematically misrepresenting business operations across multiple legal proceedings.

Each of these cases involved systematic business operations, sophisticated document creation within established systems, or coordination of complex financial transactions. None approaches the elementary nature of Lewis's basic document alterations and check mislabeling.

at 12, 16-17. *Miller* involved sustained, complex deception within a workplace environment over nearly two years, involving false bookkeeping entries, forged signatures, creation of fictitious vendor relationships, continuous account movements, and sophisticated responses to banking suspicions. When the bank became suspicious of frequent after-hours deposits, Miller composed verification letters, and when the bank rejected unnotarized letters, she opened new accounts at different banks. The scheme required ongoing workplace deception, coordination between multiple parties, and adaptive responses to detection efforts. *Id.* at 375-76.

Ms. Lewis's conduct involves none of this complexity. The government's "multiple methods" falls under its own weight. Under their logic, any combination of basic fraud steps would satisfy sophisticated means simply because multiple acts occurred. This interpretation would eviscerate the "especially complex or especially intricate" requirement.

*Miller*'s "multiple methods" analysis applied to genuinely sophisticated individual components that, when combined, created a complex fraud scheme. Each element of Miller's scheme involved meaningful deception or complexity that Lewis's methods entirely lack.

### III. The government waived any argument that the error below was harmless

The government's complete failure to address Ms. Lewis's harmless error argument constitutes a concession that reversal requires remand for resentencing rather than affirmance. This omission is particularly significant given the outcome-determinative nature of the enhancement error.

As demonstrated in the opening brief, the district court sentenced Ms. Lewis to 27 months' imprisonment—at the bottom of the calculated guidelines range of 27 to 33 months. Without the sophisticated means enhancement, the correct guideline range would have been 21 to 27 months, making a sentence at the bottom of the correct range 21 months—six months lower than the imposed sentence.

Under *United States v. Ibarra-Luna*, establishing harmless error requires *the government* to "convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." 628 F.3d 712, 720 (5th Cir. 2010). This is a "heavy burden," *id.* at 717, that the government never even attempts to meet.

"It has long been the rule in this [C]ircuit that any issues not briefed on appeal are waived." *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (citing to *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993)). When the government fails to respond to the defendant's argument on appeal, it forces this Court to undergo "unnecessary burdens," in doing the government's research for them. *United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999) ("[T]he government's failure to address legal issues raised by appellants is looked upon with disfavor because it imposes 'unnecessary burdens' on the courts."). As one court has commented, "where a court does conduct the inquiry on its own [when the government fails to brief an issue], it should err on the side of the criminal defendant." *United States v. Pryce*, 938 F.2d 1343, 1348 (D.C. Cir. 1991).

The government's failure to brief this issue suggests recognition that harmless error cannot be established. Given the outcome-determinative nature of the enhancement and the court's apparent reliance on the Guidelines calculation, remand is required if the enhancement was erroneously applied.

## CONCLUSION

For the foregoing reasons, Appellant Shaquaila Lewis respectfully requests that this Court reverse the district court's application of the sophisticated means enhancement and remand for resentencing within the correct Guidelines range.

    Respectfully submitted,

    REBECCA L. HUDSMITH
    Federal Public Defender

BY:   *s/ Dustin C. Talbot*
       DUSTIN C. TALBOT
       Appellate Chief
       Federal Public Defender's Office
       Middle and Western Districts of Louisiana
       102 Versailles Boulevard, Suite 816
       Lafayette, Louisiana 70501
       Telephone: (337) 262-6336

       *Attorney for the Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been served by the 5th Circuit electronic filing system on the Assistant United States Attorney, on September 16, 2025.

*s/Dustin C. Talbot*
DUSTIN C. TALBOT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1,896 words.

2. This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century typeface with a 14 point font.

Lafayette, Louisiana, September 16, 2025.

*s/Dustin C. Talbot*
DUSTIN C. TALBOT
